IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAO SAETERN,<br><br>      Petitioner,<br><br>vs.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,[1]<br><br>      Respondent. | No. 2:06-cv-00857-JWS<br><br>MEMORANDUM DECISION |

  Petitioner Kao Saetern, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. At the time Saetern filed his petition he was in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California Medical Facility, Vacaville, California. Saetern is no longer in custody.

I. BACKGROUND/PRIOR PROCEEDINGS/JURISDICTION

  On November 6, 2002, Saetern was convicted in the California Superior Court, Sacramento County of Assault with a Deadly Weapon (Cal. Pen. Code § 245(a)(1)), and was sentenced to four years' imprisonment, with a three-year enhancement for personal infliction of great bodily injury (Cal. Pen. Code § 12022.7(a)), for an aggregate term of seven years. The facts of the crime and the proceedings in the trial court are well known to the parties and are not repeated here.

  Saetern appealed his conviction to the California Court of Appeal, which affirmed his conviction in an unpublished reasoned decision on October 14, 2004. The California Supreme Court denied review on January 26, 2005, and Saetern's conviction became final 90 days later, April 26, 2005, when his time to seek certiorari before the United States Supreme Court lapsed.

---

[1] The People of the State of California are substituted for T. Schwartz, Warden, California Medical Facility. Fed. R. Civ. P. 17(d).

Saetern timely filed his petition for relief in this Court on April 18, 2006 (date stamped April 21, 2006).

It appears from the record that Saetern has been released from custody. It also appears from the record that Saetern received credit for 344 days actual time served prior to the imposition of sentence. Consequently, Saetern has completed his sentence and is no longer in custody. This Court retains jurisdiction as Saetern was in custody at the time he filed his petition, and the matter is not rendered moot because of the irrefutable presumption that collateral harm results from any criminal conviction.[2]

## II. GROUNDS RAISED/DEFENSES

In his petition Saetern raised four grounds: (1) denial of a right to a fair trial by failure to bifurcate the criminal street gang enhancement charge from the substantive charges; (2) denial of his right to confrontation of witness against him by allowing the introduction of preliminary hearing testimony of the victim who invoked the Fifth Amendment at trial violated *Crawford*;[3] (3) ineffective assistance of counsel by failure to move to have an attorney appointed for the victim at the preliminary hearing; and (4) the sentence at the upper term was based upon facts not found by the jury in violation of *Apprendi–Blakely*.[4]

Respondent contends Saetern's fourth ground is procedurally barred. Respondent concedes that Saetern has exhausted his state court remedies and that there are no procedural bars to any of the first three grounds.

## III. STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the

---

[2] *Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005).

[3] *Crawford v. Washington*, 541 U.S. 36 (2004).

[4] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).

state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect."[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[9]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court,[11] which in this case was that of the California Court of Appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[6] *Williams v. Taylor*, 529 U.S. at 412.

[7] *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[9] *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[10] *Fry v. Pliler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV.  DISCUSSION

Ground 1:  Failure to Bifurcate Trial.

Saetern argues that the decision of the trial court declining to bifurcate the gang-related charges resulted in the admission of evidence of gang connection that rendered it impossible for him to have a fair trial.  In particular, Saetern argues that admission of the evidence was irrelevant and prejudicial.  In rejecting Saetern's arguments, the California Court of Appeal held:

> Defendants claim the court's refusing to bifurcate the gang enhancement denied them a fair trial.  Such an assertion defies credulity in this context.  Despite admission of the largely undisputed evidence, the jury acquitted defendants of the most severe charges, including the gang enhancement charges.
>
> Nonetheless, defendants allege the court's decision resulted in the People arguing propensity based on character evidence in violation of Evidence Code section 1101, and in the jury hearing unduly prejudicial evidence in violation of Evidence Code section 352, leading to the jury's rejection of the defendants' claims of self-defense.  We disagree.
>
> Courts have "repeatedly held that it is proper to introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent. [Citations.]"  (*People v. Funes* (1994) 23 Cal.App.4th 1506, 1518, 28 Cal.Rptr.2d 758.)  Here, the evidence was relevant to proving defendants' motives and intent on the attempted murder charge as well as to prove the elements of the gang enhancement.  The evidence explained why the defendants continued to attack Durham after he had fallen unconscious to the ground and why they returned to attack him again after walking away from him.  Durham had disrespected Soukovang in front of his peers.  Soukovang was then obligated under his gang's traditions to obtain revenge at greater harm than was inflicted on him, and Naniu and Kao were obligated to assist.  Because the evidence was relevant to proving motive and intent, it was not inadmissible character evidence.  (Evid. Code, § 1101, subd. (b).)
>
> For the same reason, we conclude the trial court did not abuse its discretion in determining the evidence was not unduly prejudicial under Evidence Code section 352.  "Evidence of gang activity and affiliation is admissible where it is relevant to issues of motive and intent [citations] and, while admissible evidence often carries with it a certain amount of prejudice, Evidence Code section 352 is designed for situations in which evidence of little evidentiary impact evokes an emotional bias. [Citation.]"  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1369, 37 Cal.Rptr.2d 596.)  This is not such a situation.
>
> Were we to determine the trial court erred in admitting the evidence, we would also conclude the error was harmless.  First, the jury acquitted defendants

MEMORANDUM DECISION
*Saetern v. People of State of California*, 2:06-cv-00857-JWS    4

of the attempted murder charge and also found the gang enhancement allegation not true.  Second, even if the gang evidence had not been admitted, there is no reasonable doubt the jury would have convicted defendants on the assault charge and the great bodily injury enhancement.  The videotape is indisputably damning evidence defendants violently and criminally assaulted Durham.  By depicting all three defendants repeatedly attacking Durham after he had fallen to the ground and was offering no resistance, and by showing all three defendants walk away from Durham but then return to recommence the attack when Durham made no movement whatsoever that could be construed by a reasonable person as an imminent threat of serious harm, the videotape, not the gang evidence, proved defendants assaulted Durham and defeated defendants' claims of self-defense.  The verdict would have been no different had the gang evidence not been admitted.

The Supreme Court has ruled that evidence of gang affiliation is admissible when it is relevant to a material issue in the case.[13]  In *Dawson v. Delaware*,[14] a case decided under the First Amendment, the Supreme Court reversed a death sentence because the gang-related evidence introduced at trial "was not tied in any way to the murder of the victim."  In a later decision, the Supreme Court clearly indicated that *Dawson* constituted *constitutional* error only because it violated Dawson's First Amendment rights.[15]  Saetern has not alleged, let alone established, that the admission of the gang-related evidence violated any constitutionally-protected right.  Therefore, Saetern has not established a constitutional error.

As did the California Court of Appeal, this Court finds that, even if it was error to introduce the gang-related evidence, such evidence was harmless in that it did not have a substantial and injurious effect or influence in determining the jury's verdict.[16]

Under the facts and circumstances of this case, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of,

---

[13] *United States v. Abel*, 469 U.S. 45, 49 (1984) (relevant to show bias); *see also United States v. Banks*, 514 F.3d 959, 971–72 (9th Cir. 2008) (relevant to purpose for acting); *United States v. Easter*, 66 F.3d 1018,  1021 (9th Cir. 1995) (relevant to establish identity); *United States v. Santiago*, 46 F.3d 885, 889 (9th Cir. 1995) (relevant to motive).

[14] 503 U.S. 159, 166–67 (1992).

[15] *Romano v. Oklahoma*, 512 U.S. 1, 10–11 (1994).

[16] *Fry v. Pliler, supra*.

clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[17]  Nor can this Court find that the state courts unreasonably applied the correct legal principle to the facts of Saetern's case within the scope of *Andrade–Williams-Landrigan*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Saetern is not entitled to relief on his first ground.

Ground 2:  *Crawford* error.

The victim of the crime, unrepresented by counsel, testified at the preliminary hearing, at which he was cross-examined by counsel for Saetern.  At trial, the victim, then represented by counsel, invoked his Fifth Amendment right against self-incrimination and refused to testify.  The trial court found that the victim was unavailable and allowed a redacted version of the victim's testimony to be presented to the jury.  Saetern contends that this violated his Sixth Amendment right to confront the witnesses against him under *Crawford*.  In rejecting his argument, the California Court of Appeal held:

> The trial court also did not err by admitting Durham's preliminary hearing testimony. The admission of an unavailable witness's sworn testimony does not violate the rights of confrontation and fair trial if the testimony was subject to cross-examination. (*Crawford v. Washington* (2004) 541 U.S. ___ [158 L.Ed.2d 177].)  Indeed, defendants' trial attorneys took full advantage of Durham's availability and cross-examined him at length during the preliminary hearing. Thus, the trial court's actions did not violate defendants' constitutional rights.

*Crawford* specifically held that the Confrontation Clause gives criminal defendants the right to confront witnesses who make testimonial statements at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination.[18]  The invocation of his Fifth Amendment right against self-incrimination made the victim

---

[17] 28 U.S.C. § 2254(d).

[18] 541 U.S. at 53–54; *Moses v. Payne*, 543 F.3d 1090, 1099 (9th Cir. 2008).

"unavailable."[19]  Thus, the decision of the California Court of Appeal is not only not inconsistent with *Crawford*, but, in fact, follows the specific holding of *Crawford*.  Saetern is not entitled to relief on his second ground.

Ground 3:  Ineffective Assistance of Counsel.

Saetern argues that the failure of trial counsel to move to have counsel appointed for the victim constituted ineffective assistance of counsel.  Saetern reasons that, as did the victim's counsel at trial, appointed counsel would have advised the victim to invoke his Fifth Amendment right against self-incrimination.  The California Court of Appeal rejected Saetern's arguments, holding:

> "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings.  [Citations]"  (People v. Cunningham (2001) 25 Cal.4th 926, 1003.)
>
> Defendant cannot satisfy either prong.  First, counsel's omitting to seek appointment of counsel for a prosecution witness did not fall below an objective standard of reasonableness.  An accused's lawyer cannot be faulted for not moving the court to appoint counsel for a witness, based on the speculation or hope that counsel would advise his new client to invoke his right against self-incrimination as a predicate for refusing to testify.  Petitioner's trial counsel did not represent Durham.  Defendants are not in a position to assert any of Durham's rights for their own benefit. (Cf. *United States v. Padilla*, 508 U.S. 77, 81 ["a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure]. (Italics in original.)
>
> Second, defendant cannot show prejudice.  Had Durham exercised his Fifth Amendment rights at the preliminary hearing, the prosecution still had irrefutable evidence of defendant's violent assaults on the unconscious Durham in the videotape.  The jury's rejection of the murder and gang allegations demonstrates it relied almost exclusively on the videotape to convict defendant on

---

[19] *Padilla v. Terhune*, 309 F.3d 614, 618 (9th Cir. 2002) (applying Fed. R. Evid. 804(a), the Federal counterpart to Cal. Evid. Code § 240(a)).

the assault charge. The lack of Durham's testimony would likely not have changed this outcome.

Under *Strickland v Washington*,[20] to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[21] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[22] *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, in *Strickland* the Supreme Court admonished:[23]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

The Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts

---

[20] 466 U.S. 668, 687 (1984).

[21] *Id.*

[22] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[23] 466 U.S. at 689 (internal citations and quotation marks omitted).

in light of the evidence presented in the State court proceeding."[24]  Nor can this Court find that the Court of Appeal unreasonably applied the correct legal principle to the facts of Saetern's case as required by *Lockyer–Williams*; i.e., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  In particular, Saetern has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance.  Saetern is not entitled to relief on his third ground.

Ground 4:  *Apprendi–Blakely* Error.

Saetern having already served his entire term, there is no effective relief that this Court may grant in a Federal habeas proceeding.  Consequently, any *Apprendi–Blakely* error in imposing an upper term is moot.[25]  Saetern is not entitled to relief on his fourth ground.

## V.  CONCLUSION and ORDER

Saetern is not entitled to relief under any grounds raised in the petition.  Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[26]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter final judgment accordingly.

Dated:  December 19, 2008.

s/ John W. Sedwick<br>
JOHN W. SEDWICK<br>
United States District Judge

---

[24] 28 U.S.C. § 2254(d).

[25] In light of this holding, the Court need not address the issue of whether or not Saetern is procedurally barred from raising this issue.

[26] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).